cr4-319.kelsey 



 TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00319-CR







Walter Kelsey, Jr., Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT


NO. 0931709, HONORABLE LARRY FULLER, JUDGE PRESIDING







PER CURIAM



 A jury found Walter Kelsey, Jr., guilty of aggravated sexual assault of a child. The
jury assessed sentence at six years' imprisonment. He appeals by seven points of error,
challenging the allowance of testimony and prosecutorial comments touching on extraneous
offenses. We will affirm the judgment.



BACKGROUND


 We need not recount all of the testimony because Kelsey does not challenge the
sufficiency of the evidence supporting his conviction. We will review the testimony necessary
to illuminate our discussion of the purported harm of allowing the challenged testimony.

 The forty-five-year-old Kelsey and the complainant, B.E., a boy less than fourteen
years old, were neighbors along a creek. Their relationship began with a trading of video game
cartridges. B.E. eventually considered Kelsey a big brother of sorts, filling the void of his
strained relationship with his stepfather. Kelsey gave the complainant a video cassette recorder,
a stereo turntable, and a bicycle; Kelsey told him that, since he had bought the bike as part of a
pair with his wife, he no longer needed it after she left him. The complainant told his mother that
he received these items for doing yard work.

 B.E. testified that, on November 15, 1992, Kelsey was distraught because his wife
had left him that day. (Kelsey's ex-wife testified that she left in August and filed for divorce on
October 30; she said that the court issued temporary orders on November 15, under which Kelsey
lost his job because she was awarded their business for which he worked.) B.E. helped Kelsey
move a large television from the living room to the bedroom. The complainant fell asleep in the
bed watching television. He awoke to feel Kelsey pulling off the covers, then his pants, then his
underwear. He froze when he felt Kelsey's mouth on his penis. This continued for five to ten
minutes until Kelsey rolled him over and put his own penis partially into the complainant's anus. 
After the assault, Kelsey threatened that, if the complainant told anyone about their encounter,
Kelsey would do it again.

 Kelsey's threat frightened the complainant. B.E. testified that fear caused him to
continue to return to Kelsey's house. His visits included a camping trip with Kelsey and other
boys over Thanksgiving, and a three- or four-night stay after Christmas during the holidays. 

 Kelsey disappeared at the end of December and his wife visited the house. She
accused B.E. of stealing the bicycle. She would not allow B.E. to get clothes that he had left at
the Kelsey house until he returned the bike. After the police intervened, he returned the bike and
picked up his clothes. B.E. did not tell anyone about the assault until months later when a
policeman came to question him about his relationship with Kelsey.

 Other boys, including J.A., testified about the campouts. J.A. spoke of drinking
alcohol and smoking cigarettes provided by Kelsey. He said B.E. got very drunk at the
Thanksgiving campout. He also said that Kelsey talked explicitly about sex and suggestively
about sex with the boys, although Kelsey claimed to be joking about the latter.

 Kelsey's ex-wife contradicted elements of B.E.'s testimony besides her move-out
day. She testified that she took the stereo and the large television from the living room of the
house in late August. She said she saw Kelsey's bike in the house on December 29, 1992, but
the next day the front door was broken in and the bike was missing. She said the yard was
unkempt, but could not say for sure that B.E. had done no yardwork. She disbelieved that Kelsey
would assault a child because he disliked children and never "pushed anything on" her or anybody
else.

 The court charged the jury as follows:



Now, if you find from the evidence beyond a reasonable doubt that on or about the
15th day of November, A..D. 1992, in Travis County, Texas, the defendant,
Walter Kelsey, Jr., did then and there intentionally or knowingly cause the
penetration of the anus of [B.E.], a child younger than 14 years of age and not his
spouse, by the defendant's penis, you will find the defendant "Guilty" of the
offense of Aggravated Sexual Assault of a Child. 


. . .



Now, if you find from the evidence beyond a reasonable doubt that on or about the
15th day of November, A.D. 1992, in Travis County, Texas, the defendant,
Walter Kelsey, Jr., did then and there intentionally or knowingly cause the sexual
organ of [B.E.], a child younger than 14 years of age and not his spouse to contact
the mouth of the said Walter Kelsey, Jr., you will find the defendant "Guilty" of
the offense of Aggravated Sexual Assault of a Child.


. . .



You are further charged as the law in this case that the State is not required to
prove the exact date alleged in the indictment but may prove the offense, if any,
to have been committed at a time prior to the presentment of the indictment so long
as said offense, if any ocurred [sic] within 10 years of the date of the presentment
of the indictment.



The jury found Kelsey guilty of both acts.



DISCUSSION


 Two rules govern our resolution of most of Kelsey's points of error. First, in order
to preserve error, a party must present to the trial court a timely request, objection, or motion
stating the specific grounds for the ruling desired of the court; the party must also obtain a ruling
on the request, objection, or motion. Tex. R. App. P. 52(a). Second, error must be harmful to
the defendant to justify reversal. Tex. R. App. P. 81(b)(2). We must reverse the judgment unless
we determine beyond a reasonable doubt that the error made no contribution to the conviction or
punishment. Id.

 By point of error one, Kelsey asserts that the court erred by not granting a mistrial
when the complaining witness blurted out a reference to instances of assault preceding the charged
offense. Kelsey complains of the first answer in this exchange between prosecutor and
complaining witness:



Q: Nothing else had ever happened between you two that would make your
mom distrust him?

A: Well, I guess it was back in the summer of '93 that he started doing some
stuff to me.


Q: Okay. I want to talk, go ahead and what kind of stuff, what are you talking
about?


A: The first night that I stayed the night there he, I was asleep on the water bed
with him and --



The defense interrupted and asked to approach the bench. Though the witness, outside the
presence of the jury, said he meant to say the summer of 1992, that date precedes the November
15 date alleged in the indictment and charge.

 The defense requested that the court instruct the jury to disregard the "summer"
reference and grant a mistrial. The court declined to declare a mistrial, but instructed the jury
upon its return, "All right, ladies and gentlemen, you will disregard the last statement of the
witness and I can see right now some of you don't remember what it was. Don't ask." Later,
the deliberating jury sent a note asking whether the prosecution could have referred to other
charges of sexual assault by Kelsey against B.E. if they existed; the court responded to the note
by reminding the jurors to limit their deliberation to the charged offenses.

 We presume that a jury will follow a judge's instruction to disregard, unless the
argument or other action is so prejudicial or extreme that its harmful effect cannot be removed. 
Gardner v. State, 730 S.W.2d 675, 696-97 (Tex. Crim. App. 1987), cert. denied, 484 U.S. 905
(1988). The instruction to disregard cured any error. The complainant's statement about the
summer was brief, vague, and, from the court's assessment of the jury's reaction, scarcely
memorable. The court's later instruction on the unimportance of proving the precise date alleged
further softened the impact of the statement of "summer." We further hold that, beyond a
reasonable doubt, this testimony did not contribute to Kelsey's conviction; that was secured by
B.E.'s testimony establishing each element of the crime. We overrule point one.

 Kelsey complains of the admission of evidence of extraneous offenses by points of
error two and four. By point two, Kelsey contends that the



[p]rosecutor, through scheme and design, elicited testimony of extraneous offenses
to inflame and prejudice the jurors. This is evident from his opening statement
where prosecutor states "on another occasion," clearly referring to an extraneous
act, even though this act is alleged in the indictment to have occurred on the same
day, November 15, 1992.



Kelsey's discussion under this point dwells on the prosecutor's elicitation of testimony regarding
Kelsey's providing alcoholic beverages to minors after the court instructed him to avoid inquiry
into other incidents of unspecified misconduct. By point four, Kelsey contends that the court
erred by not granting a mistrial after the prosecutor elicited testimony of the extraneous offenses
from J.A.

 Kelsey did not preserve reversible error on either point. He failed to preserve error
on the opening statement because he did not object to the quoted passage. Kelsey did not object
immediately when J.A. testified that the boys drank alcohol and smoked at Kelsey's house on the
Thanksgiving camping trip; only after J.A. testified that Kelsey bought the beer did Kelsey's
attorney approach the bench and request a mistrial. Even if the request for mistrial preserved
error, B.E.'s unchallenged testimony on Kelsey's provision of alcohol rendered harmless any
error in allowing J.A.'s testimony. We overrule points two and four. 

 By point three, Kelsey argues that the court erred in admitting evidence of
extraneous offenses because the State did not notify him in accord with his pretrial motion
requesting notification of intent to introduce such evidence. See Tex. R. Crim. Evid. 404(b). 
That rule requires that, upon timely request by the accused, the State give reasonable notice in
advance of trial of its intent to introduce evidence of extraneous offenses in the case-in-chief. Id. 
The court of criminal appeals has held that an accused who moves the court to order disclosure
of intent to introduce extraneous offenses must obtain a ruling on his motion in order to preserve
error in the admission of that evidence. Espinosa v. State, 853 S.W.2d 36, 39 (Tex. Crim. App.
1993). Under a strict reading of Espinosa, Kelsey waived error by failing to get a ruling on his
motion. (1) Kelsey also waived error by failing to object at trial on this basis to the admission of the
evidence. Finally, we hold that the admission of the extraneous offenses was harmless; it did not
alter the plausibility of B.E.'s testimony on the elements of the offense. We overrule point three.

 By point five, Kelsey contends that the court erred in allowing the testimony of
Sandy Kelley-Kahn, an associate school psychologist for special education students at B.E.'s
school. Before her testimony began, defense counsel requested a bench conference regarding the
proposed nature of her testimony. The court said it would allow the State to inquire into the
nature of B.E.'s learning disability, but not into his character for truthfulness. The court later
expanded the scope of inquiry to allow the State's questions about B.E.'s behavior during the
period surrounding the assault. Kelsey complains that Kelley-Kahn's testimony nevertheless
amounts to inadmissible character evidence.

 We have examined Kelley-Kahn's testimony and find no harmful error preserved. 
Kelsey's contention that her testimony was not useful to the prosecution curiously argues that the
testimony did not harm his defense. Though the prosecutor did not always follow the paths of
inquiry he said he would at the bench conferences, he did not stray into harmful areas. Kelsey's
own inquiries into B.E.'s suggestibility were the most direct questions regarding B.E.'s character
for truthfulness. The court's failure to strike Kelley-Kahn's testimony is wholly excused by
Kelsey's failure to request such remedy. We overrule point five.

 By point six, Kelsey contends that the prosecutor's references to extraneous
offenses in his closing argument culminated a scheme and design to deny him a fair trial by
inflaming and prejudicing the jury against him. He complains about references to J.A.'s
testimony regarding Kelsey's purchases of alcohol and cigarettes for the boys. He did not
preserve harmful error. At trial, he objected to the prosecutor's accusation that defense counsel
lied about the facts, a comment he said unfairly attacked the defendant by "assaulting" his counsel. 
This objection preserved no error regarding reference to extraneous offenses. Also, the argument
he attacks on appeal merely restated J.A.'s testimony which, as noted, had only restated the facts
to which B.E. had testified without objection. We overrule point six.

 By point seven, Kelsey contends that the court erred in not granting his motion for
new trial because of the admission of the impermissible evidence of extraneous offenses of
providing alcohol and tobacco to minors. He argues that the cumulative effect of the errors
asserted herein was harmful to him. We will reverse a denial of a motion for new trial only when
the trial court has clearly abused its discretion. Appleman v. State, 531 S.W.2d 806, 810 (Tex.
Crim. App. 1976); Williams v. State, 864 S.W.2d 81, 83 (Tex. App.--Tyler 1993, pet. ref'd). 
Again, B.E.'s unchallenged testimony regarding the provision of alcohol and tobacco allowed the
court to conclude that its allowance of J.A.'s testimony did not require reversal. We find no
abuse of discretion and overrule point seven.



CONCLUSION


 We affirm the judgment of the trial court.


Before Justices Powers, Kidd and B. A. Smith

Affirmed

Filed: August 30, 1995

Do Not Publish
1. In Espinosa, the court opined that, since a request need not be acted upon by the court,
an accused should file a document entitled "Request for Notice of Intent to Offer Extraneous
Offenses" rather than putting such a request in a discovery motion. 853 S.W.2d at 38, n.3. It
is not clear how the court would rule on the facts here, where the accused filed a separate
document that requests the court to order disclosure. A strict reading of Espinosa would
require the court to hold that a motion requires a ruling; the court might instead hold that the
motion, set out alone, fulfills the spirit of Espinosa and acts as both a motion and a request,
thus requiring no ruling to preserve error in the failure to disclose.